Mr. Vogella. Good morning, Your Honor. Your Honor, this case appears to be a simple one about a mundane prosaic product. However, it goes directly to the issue that the Court addressed in Therosense. Inequitable conduct in patent applications and patent practice is a reality. The Court noted in Therosense that it has become a scourge, but the fact that inequitable conduct claims have become a scourge, as two of the three justices here said, is not obviate the fact that it still exists. We're seeking today reversal of the trial court's rulings on judgments on the pleadings as to the Sherman Act, as well as the court's rulings granting summary judgment as to the other claims raised in the complaint. Honesty in dealings with the Patent and Trademark Office are every bit as important as eliminating the scourge of inequitable conduct claims. Can I get to, I guess, the first of quite a number of somewhat complicated questions here? The district court granted judgment on the pleadings against your Sherman Act claim on the ground that your Sherman Act claim required ultimately a conclusion that, but for the omissions to the Patent Office, the 723 patent wouldn't have issued. And that that simply could not be proved once the whole reissue process had been gone through by the PTO and the reissue patent had issued, a patent that you have not amended your complaint to challenge here. How do you propose to prove that in the face of the reissue patent's issuance, these omissions were but for cause of the original patent's issuance? Your Honor, while many of the prior art, blocking prior art references were submitted subsequently on the reissue patent, some were not. The patent and trademark… Any substantive difference? I thought from what I was able to understand that while it's true that there are certain references that were not submitted, they show the same product, ReguPol, as were shown in the other documents which were before the PTO. So that while there may be a few differences in documentation in substance, the PTO had everything before it during the reissue process that you say was omitted for bad reasons in the first process. Well, one significant omission in the reissue was the July 19, 2000 invoice, more than one year prior to the initial 723 patent application. That invoice from Dr. ReguPol, which is the predecessor to ECOR, the respondent in this brief, in this appeal, sold product that was subsequently covered by the 723 patent, a nine millimeter sheet or nine millimeter thickness sheet of rubber underlayment to Robbins Flooring. That was never produced as any part of the… Wouldn't they just be accumulating on what was produced with respect to the time so far issue? Well, the issue really is that this particular document to this day has never been provided to the PTO. It was dispositive, we believe, as to whether or not the prior art was applicable. The other items that were not provided to the PTO on the reissue were the subsequent deposition transcripts and declaration testimony of individuals who had personal knowledge as to the process by which the patent was applied for and the prior art and the truthfulness or lack thereof of Mr. Downey's sworn oath that he was the inventor. Now, obviously, the reissue patent poses problems, and I would agree with you, Your Honor, that perhaps better practice would have been to amend the complaint to add the 945 patent because obviously the reissue is a problem, but also the covenant not to sue is a problem as it related to the 723 patent. However, the fact is that the attorney of record at the trial court did not do that. I believe, however, that the inequitable conduct argument still remains. Reissue doesn't cure fraud. Reissue does not cure inequitable conduct. But the conclusion that the district court reached here was not one that even if there was fraud or inequitable conduct, the reissue cured it. It was that the record of this reissue, which is a successful reissue, simply makes it impossible to prove an element either of walker process or after Saracens of inequitable conduct in the first one. I believe the court treated it as a dispositive item, although I believe that it should have been treated as a probative item. I believe the court had evidence before it which would have allowed it to come to a different conclusion had it considered the evidence that U.S. rubber had presented. Was there a place that you specifically pointed out how there were omissions in the first process that were not merely cumulative of everything that was in front of the patent office in the reissue process? As I pointed out, and I believe the item is in the appendix record. I don't mean specifically items that appear somewhere in the record, but items that were explained to the district court on the proper motion and shown to be non-cumulative of what the PTO later considered. Your Honor, the court found that the argument for reconsideration was improper. It was during the argument for reconsideration that U.S. rubber attempted to present the evidence regarding the July 2000 invoice and the declaration of Peter Breuer who specifically said that the product had been sold for many, many years prior. Implicit in our appeal is reversal of that decision not to allow us the motion for reconsideration. But I think the problem that we have, and again I hate to rely on justice as an argument because this is not an equitable body, but the reality is that there were accumulation of individual acts, each of which by itself did not rise to the level that would trigger a finding of an equitable conduct. However, had the court stepped back and looked at the forest versus just the individual trees, we believe that it should have found that. Mr. Downey's initial oath of inventorship we believe was false. It's been alleged that it was false. The withholding of the prior art of the 723 application, that's a fact. The fact that they were presented later indicates that they were not presented with the 723 patent application. The improper enforcement allegations, again, not proven but allegations. The failure to notify the PTO for 44 months after the respondent sued a competitor on this patent of the existence of litigation. There was a notice of concurrent proceedings filed, but it was inadequate in the sense that it didn't include all of the relevant documents. But they waited 44 months after they filed the litigation to alert the PTO to the existence of that litigation. The fact that there still has been no notification of the PTO that I'm aware of, of the U.S. rubber litigation, which was filed in 2009, roughly a year before the reissue. And I think most importantly, the suppression of the July Robbins invoice, which was in the appellate record A2338 through A2340. It is our position that had the court considered these individual items in its context, or in the totality sense, that the court should have found that we had deduced sufficient evidence to overcome the lack of tribal issue, the material fact that the court found in the ruling on the summary judgment. We believe that the conduct in this case is similar, if not quite, I mean, egregiousness is a sliding scale, obviously, but we believe that the conduct here is not unlike the conduct in Keystone, Hazel, and Precision, where we have an oath of inventorship, we have suppression of prior art, we have continued efforts to enforce the patent unfairly, but I think the other thing that the Patent and Trademark Office did not have before it, the 2010 and 2011 depositions of Mr. Dodge and Mr. Downey, which conflicted and contradicted the depositions that were provided to the U.S. PTO that were taken in 2007 and 2008 that were relating to the R.B. rubber litigation. For those reasons, we believe that the court simply abdicated the responsibility to consider the facts and consider the evidence and simply relied instead on the reissue as a way to get rid of the case. Can you address the false advertising issue? Yes, Your Honor. The false advertising, obviously, the allegation that a series of sizes are covered by a patent, the implication is false, whether it's literally false that QT SKU is a patented product. Yes, it is. That is true. It is a patented product. However, at the time that the advertisements were put into commerce, only one size, the 10 millimeter, was patented. That's not quite right. About 10 millimeters was covered by the federal language, and we don't really know what that covers. Am I right in understanding that that claim language was added during prosecution to distinguish a much thicker piece of prior art from 50 to 300 millimeters? Yes, Your Honor. The initial application was a much thicker material, and the application was rejected. It was then limited to the about 10 millimeter dimension. However, the Markman order in the RV rubber case specifically found that about 10 millimeters is 9 millimeters to 11 millimeters. Are you troubled at all that your marking contention really rests on the Markman order definition of what this contested claim language means? Because Markman orders get changed all the time. They get amended. The case can be transferred, and another court can do another Markman order and reach a different outcome as to the meaning of that ambiguous phrase. Do we really want marking false advertising claims to be based on something as fluid and movable as the Markman order? Well, I believe the Markman order that was adopted by the RV rubber court was similarly ratified by the district court in our case. Subsequently, as you know, the RV rubber case was dismissed by ECOR, we believe, to avoid patent invalidation, but nonetheless. Well, even in this record, there's a contention that that claim construction may be wrong because there was a dependent claim which, of course, has to be considered as part of the independent claim. It was much different from what the district court did. Yes, the dependent claim is 5 millimeters as opposed to the 10 millimeters. I understand, but the point is, back to the main point, how can we have false advertising claims based on such a movable target? Well, I think, Your Honor, and I took a deposition last week where a deponent told me that she was relying on common sense, and I would ask the court to do so as well. I rejected her answer, but I would ask you to rely on it as well. But the fact of the matter is that 2 millimeters is not 10 millimeters. We're flattered that you think we have common sense. Your Honor, my father once told me that the problem with common sense is it's not very common. However, suggesting that a 2 millimeter sheet or a 3 millimeter sheet is equivalent is about 10 millimeters. I would urge that common sense says that that's not true. I can see where 9 to 11, it's like a reasonable time in many of our statutes, is found to be a certain number of days. It's 30 days, not 360 days. The court has to make some determinations as to what that means. In this case, I think the Arby rubber court found that about 10 millimeters was 9 to 11. By inference, then, 2 to 3, 2 millimeters and 3 millimeters would not be, or 15 millimeters would not be about 10 millimeters. But when one then gets at the two causes of action that had something to do with falsity, false marking and false advertising, the district court rejected those without need to decide whether there was some falsity or whether some consumers might have thought it false, but that you have to prove some causal connection to the injury, either competitive injury in 292 or the claimed injury for the Lanham Act. And Houston had the evidence. And Your Honor, I acknowledge that. I know that I'm never supposed to concede, but obviously the change in the law hurt us. I suggested to opposing counsel this morning that he had a federal circuit god that brought these cases down one by one to block our efforts. But the fact of the matter is, yes, we did not develop the record at the trial court level that probably should have been developed. However, I still go back to the fact that I think that the trial court took the easy way out by simply saying the reissue patent cured all ills. Let's be done with this. I think the court should have gone through a more detailed analysis of the evidentiary record and not have granted the motion for summary judgment because I think that there was evidence there sufficient to overcome that. Thank you, Mr. Borgella. Let's hear from the other side to save you 30 seconds of rebuttal. Thank you. Excuse me. No, no, no. May it please the court. My name is Robert Nissen, counsel for Appellee E-Corps International. U.S. rubber is appealing four rulings by the trial court. The first ruling they're appealing is judgment on the pleadings. E-Corps moved for judgment on the pleadings because after the reissue patent issued, U.S. rubber could not plausibly plead but for causation. In opposing that argument, U.S. rubber made two arguments. First, it argued we properly pled each element of an antitrust claim. But that was not responsive to E-Corps' argument as the district court found. It wasn't whether they pled had the magic language for whether they could plausibly plead but for causation. The second argument they made was there's 90-some references on the face of the patent. You would need to look at all 90 to see if we plausibly pled.  The court noted that the whole issue was these products, all BSW products. Chief Judge Rady, you're correct. They're the same product. They have different marketing names. The question was were those material in that would the patent have issued but for their disclosure? The reissue patent answered that, and the court granted judgment on the pleadings. In its motion for reconsideration, however, for the first time, U.S. rubber is raising some arguments that it's raised now, as counsel said. Counsel said it's implicit that we're seeking review of the motion for judgment on, excuse me, the motion for reconsideration and that the judge was wrong when he said we couldn't raise it. Well, perhaps it's implicit, but they did not appeal that. Nowhere in their briefs did they say the judge was incorrect in filing the motion, finding that the motion for reconsideration was filed in violation of the local rules. The local rules specifically say you cannot raise an argument you could have raised in opposing the motion. The entire argument was based on the prosecution's history. The U.S. rubber had the prosecution's history when they filed their opposition, and yet they did not raise this argument. He found the argument waived, and that should be the end of it. That's a Ninth Circuit law that's reviewed for abuse of discretion, and they haven't even appealed it. Now, were you to go to the merits, you should still affirm. Counsel says that, well, there's a lot of things to consider. Nowhere, even on the motion for reconsideration, did they ever explain how the one product that isn't listed on the face of the patent that was disclosed was different from the other six. It's not different. It's the same product over and over. It's completely cumulative. He said, well, there's this July 19, 2000 letter. They had all kinds of evidence in front of them that this product was sold from 1990. No one's questioning that. That was cumulative. He said, well, they should have considered the depositions. The depositions he's referring to took place in 2011, after the reissue patent issued. Certainly, it can't be the case that we can supply depositions that don't exist. He said, well, there's something going on here. It took 44 months to put this information forth. That's flatly false. We didn't file until July 2007. And the only reason we filed in July 2007 is we had a two-year deadline on the reissue. We got this Markman here, Markman ruling, which we didn't agree with. It got rid of the five-millimeter claim, just pretending like it didn't exist. The only thing we could go after R.B. Reberon was ten millimeters. But that decision was consistent with the prosecution history, was it? I don't think so, Your Honor, because, again, as was noted, the prosecution wants to get over a 50-millimeter reference cork, which is about two inches thick. If you think about two inches, that takes a lot of the volume of a room. It was to get over 50 millimeters. In a perfect world, perhaps he shouldn't use the word about ten millimeters, but we are allowed to be our own lexicographer. And the fact of the matter is about ten millimeters had to cover five. It had to cover 15. Because the purpose of that was to get below 50, it covered two. Again, perhaps in a perfect world we could have used better language, but that order was just— So here you're facing now with the language of about ten millimeters. That was later construed to be nine millimeters. That's certainly not—it's less reasonable that it would include five millimeters, is it? Well, again, I don't think it's less reasonable when there's a dependent claim that covers five millimeters. That dependent claim has basically disappeared. Also, I should note, the dependent claim, even though the patent office had the markment in front of it, it reissued that five-millimeter dependent claim, implicitly agreeing with us. It didn't mention it in the prosecution history, but implicitly agreeing with us that it even had the markment. It did not agree that those weren't covered. He says that, well, the declaration of the inventor was fraudulent. The only reason why the declaration of the inventor would be fraudulent is if the prior art was invalidated. They made this argument over and over that these 1990 products are the patent invention. That's not true. The 1990 products, typically, if you've been to a gym or something, you have sports clothing. It has a lot of give in it. If you drop weights on it, it'll make a lot of noise. But the problem with that give, while it's good for your knees, it's bad for, say, ceramic tile in the top layer. What the invention was, was to use rubber underlayment to support this top layer. None of the prior art had that, and that's why Paul Downing was the inventor. For him to say that that's a false statement, that's just ignoring that the PTO considered all this art and said that it's not invalidated. The second issue is, was the court correct on granting the DJ for unenforceability? We believe the court was correct for two reasons. First, although the lower court did not agree with us, we believe there was not subject matter jurisdiction. We don't believe there was ever subject matter jurisdiction. Had there been, the two letters that we sent to the U.S. rubber showed there was no subject matter jurisdiction. Interestingly enough, in a ruling not appealed, the court agreed with us and dismissed the DJ for invalidity, but he kept the DJ for unenforceability. We think that was incorrect. Therefore, there's lack of subject matter jurisdiction. Because we never enforced the patent under this court's precedent, that would be another reason for confirming the antitrust claim on the Walker Process antitrust claim. On reply, the U.S. rubber raised an argument it had not previously raised. They said, well, they didn't even contest that we hadn't enforced the patent against them. They said, well, whether they can enforce it against it or not, this court has said that manufacturers can sue on behalf of their customers. And that makes some sense. Some person that paid $2 too much for a product might not bring an antitrust claim, and there's a special carve-out in that instance. But U.S. rubber has now asked the carve-out to be expanded to cover competitors. Well, U.S. rubber never explained how a competitor being sued could possibly injure them, not to mention the whole point of antitrust injury is to try to limit this virtual infinite number of plaintiffs, to say that when one competitor gets sued, another plaintiff can bring an antitrust claim. That's just not the law, and they're incorrect. You asked about the – Can I ask on the jurisdiction? I guess I would have thought that as to the Sherman Act claim, our decision in Hydral makes perfectly clear that there's jurisdiction, that a threat need not be made to the plaintiff. It's enough for the Sherman Act for the threat to be made to the plaintiff's customers, but that's not at all the case for the unenforceability claim. And as to that, I understood your argument to be that at least after, first, the two covenants not to sue, and second, the reissue, which is not challenged here, there could not have been jurisdiction to decide to issue an unenforceability declaratory judgment, and that this is different from Monsanto. Well, that's absolutely correct, Your Honor, although I would argue in terms of Hydral that there's no allegation here that we threaten the customers. There's just none. The only allegation is that we threaten them, and then even that, they, on reply, they don't even argue that we threaten them. So is there, under a case law, is there a difference whether the threatening letters go to competitors versus customers? I think so, Your Honor, because if they go to competitors, the competitor is fully free to file any antitrust claims they want. The carve-out in antitrust injury that this court made for customers is just the reality of modern litigation. If you pay $2 too much for your flooring, you're probably not going to bring a lawsuit on it, whereas the competitors who are selling however much they sell, they're fully capable of protecting their own rights. U.S. rubber doesn't have any standing to come in and say, well, we're going to protect our competitors' rights for them, and we're going to get money based on our competitors' damages. It's not even close to being the law anyway. On the Lanham Act claim, Ecore made two arguments below. First, it said U.S. rubber has not proven any causation. Now, in his opening argument, counsel conceded that they had not made that connection. That should be the end of both claims. I understand under the old false marking, causal connection wasn't required, but it certainly is now. Below, as the district court correctly found, they did not even raise an argument on the causal connection. We raised that. That was one of the two reasons we asked for summary judgment, and we said they hadn't shown that they had any damages caused by the alleged false marking, and the response to that was silence. The lower court even looked in the record and said there's nothing here. So the district court can't possibly have made a mistake. An argument they didn't raise below, it can't possibly make a mistake, where here the opposing counsel agreed that there is no causal connection. There was evidence which the district court discussed that at least one builder, was it a Mr. Fuller from NV Homes or one of the big builders, came to a meeting with Smyrno, I think it was, or Smyrno, and said are these the products that ECOR is threatening to sue about or something like that, and the Smyrno's affidavit or declaration says we answered the question, he said meeting over, I'm out of here. Why is that not evidence that there's some causal connection to harm to all of ECOR's competitors? Well, I think there's two issues. First off, that was raised in terms of the false marking, not in terms of Lanham Act. They didn't put any of this evidence in the Lanham Act. I believe they said on the false marking. But the second thing is as the court correctly found, the only evidence that they put in at all was hearsay. Why is that hearsay? It's not hearsay for me to report what you have told me that reflects your belief. But here's reporting to prove the truth of the matter asserted that the reason why the distributor— His belief is the truth of the matter asserted. Excuse me? Mr. Fuller believed that he was not going to get into this because he was worried about threats, about some sort of infringement threat. Mr. Fuller provided no testimony. All we have— I'm sorry. His words were spoken to the man who heard them, Swornow. Swornow reported statements of Fuller's belief. I don't see where the inadmissible hearsay is. In fact, I'm not sure that there's hearsay, but it certainly wouldn't be inadmissible hearsay because it's a statement of state of mind, Your Honor. I'm not sure it matters whether it was inadmissible hearsay because I'm not sure there's a connection to the false aspect of the marking, but I don't see why the district court was right in saying that that was inadmissible hearsay. Well, Your Honor, all I can say is putting aside the exception, if Mr. Fuller was lying and that wasn't his belief, then that wouldn't help them. So that statement had to be true. So it would be hearsay, but more importantly, you get to the heart of it. One thing they never did is they never said this false advertising caused this. What they said is, well, they sue people, and we were worried about being sued. The whole industry knew we sued RB Rubber. That was not hidden. This was not a big industry. But for them to say that they were harmed, not because people knew that we enforced our patent, but because on a four-page brochure, it says QTSU is a patented product. There was no evidence, including what you just alluded to, that that caused them injury. They have tried to turn this case into a general bad actor patent that, well, you shouldn't enforce the patent. But that's not what Lanham Act is about. That's not what the false market is about. Can I ask you a legal question? I was not able to find, at least quickly, an answer to this. Have false marketing cases ever been brought based on truthful representations about a patent and what it covers, but instead based on the bad, exceptionally bad, fraudulent, corrupt practice in getting the patent? Never seen such a case before. I know my time's up, but to read the quote, during the meeting, Mr. Fuller brought the topic of e-course patents and asked whether we were the ones violating e-course patents. Nothing about false marketing. Shortly thereafter, Mr. Fuller terminated the meeting and did not purchase Verdi-X. Even here, he's not saying that Mr. Fuller didn't buy. He has this one statement, but there's not even a causal connection on that. Thank you, Mr. Nissen. Well, Gally, we have just a little time. Thank you for reminding me of the 30 seconds you're on. The reality is that many of the problems of this case, separate from the start, came about by chance. But the fact remains that R.B. Rubber engaged in practices which we believe the court should not condone. I think that at each level, that they were caught, they responded, they did things differently to try to sanitize, and fix the prior act. As far as the document dumps, they're in the brief. We know when they were. They were well past the point that they should have disclosed this to the PTO. And as far as the litigation involving R.B. Rubber, only the motion for attorney's fees was included. There were no pleadings. There were no other motions. So we think that the PTO was deprived of the full record that it should have had in order to make a decision on the reissue. Thank you, Your Honor. Thank you, Mr. Vogella. And the next and last case this morning.